IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CAMMIE I. TURNER                                              PLAINTIFF

V.                              NO. 14-3092

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Cammie I. Turner, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. §405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on July 8, 2011, alleging an inability to work since October 30, 2010, due to bipolar disorder, post traumatic stress disorder (PTSD), depression, asthma, arthritis, diverticulitis, and irritable bowel syndrome (IBS).  (Tr. 202-209, 247, 250).  An administrative hearing was held on September 11, 2012, at which Plaintiff appeared without representation and testified. (Tr. 78-152).

By written decision dated May 10, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – obesity, bilateral hearing loss, history of syncope, history of asthma, depressive disorder, not

1

otherwise specified (NOS)/major depressive disorder, post-traumatic stress disorder (PTSD)/generalized anxiety disorder, and personality disorder with borderline traits. (Tr. 38). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 39). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot perform jobs that require excellent hearing, e.g. no jobs which require communication by telephone or frequent interpersonal contact. The claimant must avoid even moderate exposure to temperature extremes, humidity, fumes, odors, dusts, gases and poor ventilation. She must avoid all exposure to hazards including no driving as part of her work. She is able to perform simple and repetitive tasks in an environment in which interpersonal contact is only incidental to the work performed.

(Tr. 41). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was not able to perform her past relevant work, but there were jobs Plaintiff would be able to perform, such as machine tender, inspector, and clerical worker. (Tr. 47-48).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 29, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.**　**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.   Discussion:**

Plaintiff argues that there was not a sufficient consideration of the practical, vocational impact that Plaintiff's anxiety, depression and tendency to experience dramatic mood swings would inevitable have. Plaintiff also argues that the ALJ did not consider the fact that her "seizures" would require accommodation by an employer.  (Doc. 9).

**A.  Credibility:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies

4

appear in the record as a whole. Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The Court finds there is substantial evidence to support the ALJ's credibility analysis.

**B.  RFC Determination:**

As stated earlier, the ALJ found that Plaintiff retained the RFC to perform light work with certain limitations.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

5

In making his RFC determination, the ALJ considered Plaintiff's medical records, which reveal that on August 26, 2011, Dr. Shannon Brownfield conducted a General Physical Examination. (Tr. 351). He concluded that Plaintiff heard normal conversation, her range of motion was all within normal limits, there was no muscle weakness or atrophy, and Plaintiff could perform all limb functions. (Tr. 353-354). Dr. Brownfield concluded that globally, Plaintiff had moderate to severe "(if 'episodes' are real)" limitations secondary to "psych + poss. neurological episodes." (Tr. 355).

Four days later, on August 30, 2011, non-examining consultant, Dr. Charles Friedman, completed a Physical RFC Assessment, wherein he found Plaintiff would be able to perform medium work and should avoid exposure to fumes, odors, dusts, gases, and poor ventilation, because of her history of asthma. (Tr. 360).

On September 13, 2011, Plaintiff underwent a Mental Diagnostic Evaluation by Terry L. Efird, Ph.D. (Tr. 365). Plaintiff reported to Dr. Efird that she applied for disability benefits secondary to "I'm losing my hearing; and, I have always fallen and thought I was kind of clumsy." (Tr. 365). A history of outpatient mental health services reportedly occurred in the past and the last date of mental health services was estimated to be 2003. (Tr. 366). Psychiatric medication was denied because of financial obstacles. (Tr. 366). Plaintiff endorsed the ability to perform basic self-care tasks independently and household chores adequately. (tr. 366). Dr. Efird diagnosed Plaintiff as follows:

    Axis I:        PTSD; depressive disorder NOS
    Axis II:       Personality disorder NOS (borderline traits) – primary diagnosis
    Axis V:      55-65

(Tr. 368). Plaintiff's ability to shop independently was endorsed, as was the ability to handle personal finances. (Tr. 368). The ability to perform most activities of daily living adequately

6

was endorsed. (Tr. 368).  Dr. Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner, communicated in a reasonably intelligible and effective manner, had the capacity to perform basic cognitive tasks required for basic work like activities, appeared able to track and respond adequately, and generally completed most tasks within an adequate time frame. (Tr. 368-369).

On September 16, 2011, non-examining consultant, Jerry R. Henderson, Ph.D., completed a Mental RFC Assessment and Psychiatric Review Technique form, and concluded Plaintiff had a mild degree of limitation in activities of daily living, a moderate degree of limitation in maintaining social functioning and in maintaining concentration, persistence, or pace, and had one or two episodes of decompensation, each of extended duration. (Tr. 384).

On November 1, 2011, Christal Janssen, Ph.D., affirmed the initial mental assessment. (Tr. 399).  On November 7, 2011, Dr. Bill F. Payne affirmed the assessment dated August 30, 2011. (Tr. 400).

In 2012, Plaintiff was seen at North Arkansas Regional Medical Center, complaining of right flank and low abdominal pain, and was diagnosed with a urinary tract infection and renal colic. (Tr. 440).  A CT scan of her abdomen and pelvis revealed a left ovarian cyst and a small left renal calculus. (Tr. 422).  She was also seen at that facility in May of 2012 for an animal bite. (Tr. 546).  On July 23, 2012, Plaintiff presented to the same facility with an intentional overdose, and was diagnosed with intentional overdose and urinary tract infection. (Tr. 485).  On July 24, 2012, Plaintiff was discharged, with a report that she had done quite well, and that she was seen by Health Resources of Arkansas (HRA), who agreed to see Plaintiff in outpatient follow-up. (Tr. 520).   Kris Anderson, LMSW, of HRA,

7

diagnosed Plaintiff with depressive disorder nos, and assigned her a GAF score of 38. (Tr. 467). It was determined that Plaintiff did not meet the criteria for acute care. (Tr. 468). On August 2, 2012, David Reynolds, LPC, of HRA, gave Plaintiff a GAF score of 48. (Tr.492).

At the hearing, Plaintiff testified that HRA had provided her with medication, and that it had helped. (Tr. 122-123). She stated that she had been on a grant program with HRA, who provided the medications. (Tr. 124). Plaintiff's husband testified that Plaintiff had been taking Zoloft and had been making a lot of progress with it. (Tr. 135). He stated that when she finally got back on the medication, it started improving her depression. (tr. 139).

After the hearing, Plaintiff presented to North Arkansas Regional Medical Center, complaining of a headache. (Tr. 502). She reported that she had a history of "mini seizures." (Tr. 503). A CT of her head without contrast revealed a normal study. (Tr. 519).

After the ALJ issued his unfavorable decision, Plaintiff presented the Appeals Council with records from Dayspring Behavioral Health, dated July 4, 2014 and August 15, 2014. (Tr. 8- 13). The Appeals Council indicated that it reviewed the evidence, and because the ALJ decided the case through May 10, 2013, the new information was about a later time. (Tr. 2). Therefore, the Appeals Council stated that the information did not affect the decision about whether Plaintiff was disabled beginning on or before May 10, 2013. "An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later acquired disabilities or subsequent deterioration of a previously non-disabling condition." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). "Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits." Id.

8

The ALJ considered Plaintiff's daily activities, noting that she was able to shop, read, drive, prepare meals, handle money, watch television, help care for her disabled husband, perform self-care, perform household chores, and get along with family and friends. (Tr. 39). It is also noteworthy that on the day of the hearing, Plaintiff testified that she was also caring for a five week old puppy. (Tr. 114).  None of Plaintiff's treating sources mentioned any mental functional restrictions. The Court finds the ALJ sufficiently considered Plaintiff's mental impairments in determining the RFC.

With respect to Plaintiff's mini seizures, the ALJ noted that Plaintiff reported having staring episodes. (Tr. 41).  He also noted that Plaintiff nevertheless had not seen a neurologist due to lack of money. (Tr. 41).  The ALJ also stated that Plaintiff reported Dr. Brownfield diagnosed her with a history of mini seizures during a disability work-up, and that a CT scan of her brain was normal. (Tr. 42-43).  The Court finds it noteworthy that Dr. Brownfield gave Plaintiff limitations "(if 'episodes' are real)." (Tr. 355).  The ALJ also addressed Plaintiff's lack of resources as the reason she was not seeking treatment or taking prescribed medications, and found there was no indication Plaintiff availed herself and exhausted all possible resources available. (Tr. 44).

The Court finds that Plaintiff has failed to prove that her history of syncope resulted in any restriction exceeding her RFC to avoid all exposure to hazards in the workplace, including no driving.

Based upon the foregoing, as well as for those reasons given in Defendant's well stated brief, and after considering the record as a whole, the Court finds there is substantial evidence to support the ALJ's RFC determination.

**C.  Hypothetical Question:**

The ALJ presented the following hypothetical questions to the VE:

Q:  Okay. So if you have a hypothetical individual same age, education, past work as Ms. Turner. And if the individual's limited to light work as defined by the Social Security Regulations, could they find that the hypothetical individual must avoid jobs which require excellent hearing,…

> Avoid the – individual must avoid even moderate exposure to temperature extremes; humidity; fumes; odor; dust; gases; poor ventilation; and must avoid all exposure to hazards, including no driving as part of work. And assume the hypothetical individual is able to perform simple and repetitive tasks in an environment, in which interpersonal contact is only incidental. And with regard to the hearing limitations, when I say no jobs requiring excellent hearing, I'm going to also mean no jobs which require communication by telephone, or I guess frequent interpersonal contact.  I know we talked about incidental interpersonal contact with the mental.  And when I'm – I mean that from the standpoint of where she has to take frequent orders from people, or frequent instructions from people, and things like that that the hypothetical individual would have to avoid jobs that involve that type of activity.  I'm not expressing that quite right.  But I hope you understand what I mean?

> …

Q:  Now do you think such a hypothetical individual could perform any of Ms. Turner's past work, either she [sic] performed or it's generally performed?

> . . .

A:  Okay. No , sir. The individual could not perform any of the past –

Q:  Can you identify a light level jobs [sic] that would accommodate those limits?

A:  Yes, sir.  …One example would be a machine tender… inspector jobs;

. . .

Q:  Okay. If I reduce the hypothetical down to the sedentary level, would you be able to identify sedentary level jobs that would accommodate those limits?

A:  Yes, sir, there's sedentary jobs. Let's see. There's some basic clerical jobs, sedentary, unskilled….There are sedentary machine tender jobs. …

(Tr. 144-146).

10

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the machine tender, clerical, and inspector jobs.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.  Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 14th day of December, 2015.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE